In re Israel H. & Anne KIRSCHNER, Debtors.

Bankruptcy No. 183–32027(260).

United States Bankruptcy Court, E.D. New York.

Feb. 15, 1985.

obtain a determination under this rule.

Charles Weintraub, White Plains, N.Y., for debtors; Ellen Werfel-Martineau, White Plains, N.Y., of counsel.

Bizar & D'Alessandro, New York City, for American Metal Moulding; Erwin J. Shustak, New York City, of counsel.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

This is a motion by a creditor seeking to reopen a Chapter 7 case (A) to revoke a debtor's discharge and (B) to commence an adversary proceeding to determine whether the debt owing to it is nondischargeable by reason of fraud. The motion is denied for the reasons herein set forth.

## I

### FACTS

In an order signed October 19, 1983 Anne Kirschner was appointed guardian ad litem of her husband, Israel Kirschner, by the Supreme Court of the State of New York for the purpose of filing a petition in Bankruptcy.[1] On October 25, 1983 she filed a joint petition for relief under Chapter 7 for herself and on behalf of her husband in her capacity as his guardian. Israel Kirschner passed away shortly after the filing of the petition.[2] For clarity, Anne Kirschner will be referred to as the debtor in this opinion. Notice was sent to all creditors including American Metal Molding (the "creditor"), which was listed in the debtors' schedules as a disputed creditor for $33,000, fixing January 30, 1984 as the last day to com-

---

1. A guardian may file a voluntary petition in bankruptcy where a court order authorizes such a filing. *In re Clinton*, 41 F.2d 749 (D.Cal.1930).

2. The death of a debtor does not abate a bankruptcy case. *Matter of Danenberg*, 1 B.R. 745, 5 B.C.D. 11 (Bkrtcy.S.D.N.Y.1980). *See also,* Bankruptcy Rule 1016 which provides:

Death or insanity of the debtor shall not abate a liquidation case under Chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or insanity had not occurred. If a reorganization or individual's debt adjustment case is pending under Chapter 11 or Chapter 13, the case may be dismissed; if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or insanity had not occurred.

mence any adversary proceedings to object to discharge and to determine the dischargeability of debts. The creditor filed a proof of claim for $33,503.64 dated January 4, 1984, and was represented by counsel at all hearings in the bankruptcy proceeding. No adversary proceedings were commenced either objecting to the discharge or to the dischargeability of any debt. A discharge was granted to the debtor on April 26, 1984 and the case was closed on May 17, 1984.

At the time Anne Kirschner filed the personal Chapter 7 petition, Concord Wire and Cable Corporation ("Concord"), a corporation wholly owned by Israel and Anne Kirschner, also filed a companion Chapter 7 petition in bankruptcy.

In January and February, 1982, prior to filing its petition in bankruptcy, Concord purchased wire and cable from the creditor on open account for the sum of $33,503.64. After rendering a bill, the creditor met with Israel Kirschner and his representatives. It was informed that Concord was unable to pay this obligation. Thereafter, the creditor commenced a suit for goods sold and delivered against Concord and the Kirschners individually in New York Supreme Court, Kings County, for the amount in question. The suit which was to be tried on December 5, 1983 was automatically stayed by the filing of the Kirschner's and Concord's petitions in bankruptcy.

In an affidavit in support of the present motion, the creditor states that on January 4, 1984, its attorney wrote a letter to Joseph Frier, Esq., the trustee in the Kirschner proceeding. In this letter the creditor explained that it had subpoenaed Concord's bank records and hired a private investigative firm in conjunction with the action it had previously brought against Concord and the Kirschners. As a result of these efforts the creditor's letter states "[w]e have in our possession certain facts" concerning "suspect" transactions which warrant investigation for possible fraud. (Letter of Erwin J. Shustak, Esq., 1/1/84). The letter further explains that as a result of these investigations it possessed checks

from Concord signed by Anne Kirschner as an officer of the corporation, to Diamex, a company in which the Kirschners' son-in-law was a principal. One check for $30,000 was written at the time Concord claimed it was unable to pay its obligation to this creditor. The letter also discusses a financial statement allegedly signed by Anne Kirschner on behalf of Concord on October 5, 1981, which did not mention any indebtedness to Diamex. The letter states this false financial statement was submitted to Dun & Bradstreet, which in turn disseminated it to creditors, who like themselves subscribed to its service. A bulk sale of Concord's assets on November 17, 1982 was also mentioned in the attorney's letter. A copy of the investigative report and checks were annexed to the letter.

Notwithstanding the foregoing, the creditor did not object to the debtor's discharge nor to the dischargeability of its debt or request an extension of time in which to investigate the suspected fraud.

As appears from an affidavit on file in this case, on April 26, 1984, at the adjourned Section 341 hearing of the Concord matter, the trustee advised the creditor that Anne Kirschner was in the process of receiving a discharge in her personal bankruptcy in another courtroom. The creditor's attorney proceeded to the discharge hearing, orally objected to the discharge and was instructed to file an appropriate motion if he sought to set aside the discharge granted to Anne Kirschner. (Affidavit in Support of Motion by John S. Kiley, 6/19/84 at Para. 2).

On July 9, 1984, the creditor made a motion pursuant to Bankruptcy Rule 5010 to reopen this case to (A) vacate and set aside Anne Kirschner's discharge pursuant to 11 U.S.C. 727(d) and (B) to permit American Metal to commence an adversary proceeding to determine whether Anne Kirschner's debt to it is nondischargeable.

The creditor, who makes vague allegations that the debtor is the alter-ego of Concord, claims the debtor has committed fraud and that it had no knowledge of this fraud until after the time for filing objec-

tions to discharge had expired. Specifically, the creditor states the following constitute the alleged fraud: Concord failed to disclose a debt to Diamex, the debtor signed a false financial statement in her capacity as an officer of Concord which was submitted to Dun & Bradstreet and disseminated by it to creditors and that Concord made a surreptitious bulk sale of its assets.

The debtor claims the creditor, by admission in its own letter dated January 24, 1984, to the trustee, had knowledge of all these transactions prior to the time for filing objections to both discharge and dischargeability of its debt.

## II

## ISSUES

1. Should the creditor be permitted to reopen a case to revoke a discharge pursuant to 11 U.S.C. Section 727(d)(1) by reason of alleged fraud known to it before the debtor's discharge was granted?

2. Should the creditor be permitted to commence an adversary proceeding to determine the dischargeability of its debt after the time for filing objections to dischargeability has expired?

## III

## DISCUSSION AND CONCLUSIONS

■ The creditor now seeks to reopen this joint bankruptcy case which was filed by Anne Kirschner. Once a bankruptcy case has been closed it may be reopened pursuant to 11 U.S.C. Section 350(b) which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." This section leaves the determination of sufficient "cause" to reopen a case to the discretion of the court based upon the facts of each case. *In re Sheerin,* 21 B.R. 438, 9 B.C.D. 491 (Bkrtcy.App. 1st Cir.1982; 2 *Collier on Bankruptcy,* Para. 350.03 at 350–6 (15th ed. 1984). A creditor's request for an opportunity to revoke a discharge pursuant to 11 U.S.C. Section 727(d),[3] may be sufficient cause to reopen a case. Here we find there is no cause to reopen this case.

■ Initially, we will consider whether the case should be reopened to provide for the revocation of Anne Kirschner's discharge. "11 U.S.C. Section 727(d) provides in relevant part that the court shall revoke a discharge obtained through the fraud of the debtor, provided the party seeking to have the discharge revoked did not know of the fraud until after the discharge was granted and the action to revoke is commenced within one year of the granting of the discharge." *In re Peli,* 31 B.R. 952, 954 (Bkrtcy.E.D.N.Y.1983); *See also, In re Waldman,* 33 B.R. 328, 11 B.C.D. 81 (Bkrtcy.S.D.N.Y.1983). "[This] section requires ... that the requesting party not know of such fraud until after the granting of the discharge. This is essential." 4 *Collier on Bankruptcy,* Para. 727.15(3) at 727–92 (15th ed. 1984). In addition, the requesting party has the burden of proving, by clear and convincing evidence,[4] all allegations with respect to revocation of a discharge. *Matter of Decker,* 595 F.2d 185 (3d Cir.1979); *In re Peli, supra.* This includes his lack of knowledge prior to discharge.

---

**3.** Section 727(d) and (e) provide in pertinent part as follows:

(d) On request of the trustee or a creditor, after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

....

(e) The trustee or a creditor may request a revocation of a discharge—

(1) under subsection (d)(1) of this section, within one year after such discharge was granted ....

**4.** Revocation of a discharge is usually an adversary proceeding. However, since the present proceeding was brought by motion, the parties agreed at the hearing to apply all adversary rules, but waive discovery. (Transcript 8/1/84 at 25.)

■ It is to be observed at the very outset that none of the acts complained of by the creditor were committed by the debtor, but rather by Concord. In any event, this court finds the creditor has failed to demonstrate it lacked knowledge of the transactions on which it now bases its allegations of fraud prior to the granting of the discharge. The evidence in this case clearly demonstrates that on January 4, 1984, the date of its letter to the trustee and at a time considerably prior to the date the debtor's discharge was granted in April, 1984, the creditor was aware of the facts relating to the alleged fraudulent acts of the debtor. It knew of Diamex and its transactions with Concord, as well as the financial statement submitted to Dun & Bradstreet and the bulk sale of assets. January 4, 1984 was not only prior to discharge, but was also prior to the last day for filing objections to discharge. This court finds that the creditor fails to satisfy the requirements of Section 727(d)(1). There is no cause to reopen this case for the purpose of revoking the discharge and thus, the order of discharge stands.

We next consider whether there is cause to reopen to permit the creditor to prove that its debt is nondischargeable. "Discharge and dischargeability are separate concepts." *In re Waldman, supra,* 33 B.R. at 330. *See also, In re Koritz,* 2 B.R. 408, 6 B.C.D. 47 (Bkrtcy.D.Mass.1979). The creditor also seeks to reopen this case to commence an adversary proceeding to file a complaint to determine the dischargeability of a debt owed to it under 11 U.S.C. Section 523(a)(2) and (c),[5] after the time for

filing such a complaint has expired. "The cases make it clear that the dates fixed by the court for dischargeability complaints should be rarely extended after their expiration as a matter of policy. The repose afforded to the debtors by their discharge should be disturbed only for compelling reasons." *In re Waldman, supra,* 33 B.R. at 331.

■ A majority of cases hold that where the application for an extension of time for filing a dischargeability complaint has expired, a showing of "excusable neglect" is required. "The words 'excusable neglect', are words of art, and are subject to the interpretation of the trier.... ['E]xcusable neglect' [has been] interpreted as meaning the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *In re Manning,* 4 B.C.D. 304, 305 (D.Conn.1978). *See also, In re Parrish,* 13 B.R. 539, 8 B.C.D. 285 (Bkrtcy.W.D.Ky.1981); *In re Breining,* 6 B.R. 837, 7 B.C.D. (Bkrtcy.S.D.N.Y.1980). This court finds that the creditor has not made a showing of "excusable neglect."

From the documents presented to this court for its consideration, it is apparent that the creditor and his attorney possessed information on which to file an objection to dischargeability prior to January 30, 1984, the last day on which to file such a complaint. This court also finds the creditor had ample time and opportunity to request an extension of time to file this complaint under Bankruptcy Rule 4007[6]

---

5. Section 523 provides in relevant part:
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
 ....
 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....
 ....
 (c) [T]he debtor shall be discharged from a debt specified in paragraph [523(a) ](2) ... unless, on request of the creditor ... the court

determines such debt to be excepted from discharge....

6. Bankruptcy Rule 4007 states in part:
 ....
 (c) *Time for Filing Complaint Under Section 523(c) in Chapter 7 Liquidation and Chapter 11 Reorganization Cases; Notice of Time Fixed.* A complaint to determine the dischargeability of any debt pursuant to Section 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to Section 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On mo-

and to conduct an examination pursuant to Bankruptcy Rule 2004[7] to investigate questionable events.

The creditor received notice of the bankruptcy proceeding, filed a proof of claim and through its attorney, attended each of the hearings in this case. (Affidavit of John S. Kiley in Support of Motion, 6/19/84 at Para. 6). The creditor offers no explanation for its failure to file a dischargeability complaint on time, except that its attorney wrote to the trustee regarding these matters. If a creditor suspects fraud, it is the responsibility of the creditor, not the trustee, to follow the proper procedures for objecting to the dischargeability of its debt. A trustee is not a proper party to file a complaint seeking a determination of dischargeability of a debtor's debts. *In re Overmyer*, 26 B.R. 755 (Bkrtcy.S.D.N.Y.1982). Notwithstanding the fact that by virtue of 11 U.S.C. Section 704 the trustee is required to investigate (11 U.S.C. Section 704(3)) the financial affairs of the debtor and if advisable, oppose the discharge of the debtor (11 U.S.C. Section 704(7)), the failure of the trustee to do any of these things should not excuse the creditor if it desires to oppose the discharge of the debtor. Nowhere in Section 704 is there a duty thrust upon the trustee to commence an adversary proceeding to determine the dischargeability of a debt.

"[T]he failure of the creditor to timely file its complaint was due solely to circumstances which were altogether under its control. This type of behavior … does not constitute excusable neglect." *In re Manning, supra,* at 305. Thus, there is no ground on which to reopen this case to permit the creditor to prove nondischargeability of its debt.

tion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

7. Rule 2004 provides in pertinent part:

(a) *Examination on Motion.* On motion of any party in interest, the court may order the examination of any person.

The order of discharge stands and the claim of American Metal Co. is discharged.

SO ORDERED.

(b) *Scope of the Examination.* The examination of any person under this rule or of the debtor under Section 343 of the Code may relate only to the acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.